IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS, BEAUMONT DIVISION

| | |
|---|---|
| ASSOCIATED BUILDERS AND CONTRACTORS OF SOUTHEAST TEXAS; ASSOCIATED BUILDERS AND CONTRACTORS, INC.; and NATIONAL ASSOCIATION OF SECURITY COMPANIES, <br><br> Plaintiffs <br><br> vs. <br><br> ANNE RUNG, ADMINISTRATOR, OFFICE OF FEDERAL PROCUREMENT POLICY, OFFICE OF MANAGEMENT AND BUDGET, <br><br> CHARLES F. BOLDEN, JR., ADMINISTRATOR, NATIONAL AERONAUTICS AND SPACE ADMINISTRATION, <br><br> ASHTON B. CARTER, SECRETARY OF DEFENSE,  and <br><br> DENISE T. ROTH, ADMINISTRATOR, U.S. GENERAL SERVICES ADMINISTRATION, <br><br> In their official capacities as Chair and Members of the FEDERAL ACQUISITION REGULATORY COUNCIL, and <br><br> THOMAS E. PEREZ, SECRETARY OF LABOR, UNITED STATES DEPARTMENT OF LABOR, <br>In his official capacity, <br><br> Defendants. | NO. 1:16-CV-00425 |

**PLAINTIFFS' COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF**

1

1.      Plaintiffs ASSOCIATED BUILDERS AND CONTRACTORS OF SOUTHEAST TEXAS ("ABCSETX"), ASSOCIATED BUILDERS AND CONTRACTORS, INC. ("ABC"), AND NATIONAL ASSOCIATION OF SECURITY COMPANIES ("NASCO") (collectively "Plaintiffs"), by and through their undersigned counsel, for their Complaint against the Defendants, herein state as follows:

## NATURE OF THE ACTION

2.      Plaintiffs bring this action to have declared unlawful and set aside Executive Order 13673 issued by the President on July 31, 2014, Exec. Order No. 13,673, 79 Fed. Reg. 45309 (August 5, 2014) and amended by the President on August 23, 2016, 80 Fed. Reg, 58807 (August 26, 2016); as implemented by the Final Rule promulgated by the Federal Acquisition Regulatory ("FAR") Council on August 25, 2016, 81 Fed. Reg. 58562 (August 25, 2016); and the United States Department of Labor's ("DOL") Guidance incorporated by reference in the Final Rule, issued on August 25, 2015.  81 Fed. Reg. 58654 (August 25, 2016) (hereafter the "Executive Order," the FAR Rule," and the "DOL Guidance").

3.      The Executive Order is not self-enforcing and calls for action by the FAR Council and DOL in order to implement its provisions. The FAR Council issued the FAR Rule and DOL issued the DOL Guidance expressly for the purpose of implementing the Executive Order. The FAR Rule is entitled "Federal Acquisition Regulation, Fair Pay and Safe Workplaces," RIN 9000–AM81. The DOL Guidance is entitled "Guidance for Executive Order 13673, 'Fair Pay and Safe Workplaces,'" ZRIN 1290–ZA02.  The FAR Rule and the DOL Guidance are both scheduled to take effect in phases beginning on October 25, 2016. *See* 81 Fed Reg. 58562.

4.      The Executive Order, FAR Rule, and DOL Guidance are unprecedented in their exercise of executive authority over matters previously controlled by Congress. Under the guise of increasing efficiency and cost savings in federal contracting, the Executive Branch is imposing new regulatory burdens on government contractors that exceed and contradict Congress's carefully balanced labor and employment law statutory scheme. Specifically, the Executive Order, FAR Rule, and DOL Guidance compel prospective and existing contractors to publicly disclose and declare whether they have been found to have violated any of fourteen federal labor or employment laws, even though such "violations" have not been finally adjudicated by any court and even if the claimed violations are still being contested or have been settled without a hearing and without any finding of an actual violation of any law.

5.      The potential consequences of such compelled speech are severe. Based on the disclosures, which extend far beyond any information previously deemed relevant to government contractors' responsibility to perform government work, the Executive Order, FAR Rule, and DOL Guidance will now require federal contracting officers for the first time to determine whether the alleged violations of fourteen different labor and employment laws should disqualify contractors from being awarded or continuing to perform government contracts. As further described below, a cumbersome and burdensome new regulatory regime is being created to implement this misguided executive policy, which again exceeds the Executive's authority and violates the rights of government contractors, at considerable cost and with no benefits to taxpayers.

6.      The Executive Order, FAR Rule, and DOL Guidance are unlawful and must be vacated.  Together and separately, they exceed the Executive Branch's authority under and directly conflict with the laws enacted by Congress, in violation of settled doctrines of labor law

preemption and separation of powers. The Executive Order, FAR Rule, and DOL Guidance also violate the First Amendment to the United States Constitution by compelling speech as to controversial matters on the part of government contractors, forcing them to make public declarations about "violations" which they are contesting or have settled without final adjudication of the claimed transgressions.  The new regulatory regime further violates the due process rights of such government contractors by exposing them to disqualification from government contracts without a hearing for alleged violations of labor and employment laws that have not been finally adjudicated by administrative agencies and the courts, contrary to the intent of Congress and in an arbitrary and capricious manner.

7.      The Executive Order and the FAR Rule also for the first time prohibit government contractors from entering into lawful arbitration agreements with their employees. The Executive Order and the FAR Rule thereby violate the Federal Arbitration Act ("FAA") and are inconsistent with United States Supreme Court precedent interpreting the FAA. The Executive Order and the FAR Rule also impose arbitrary and burdensome paycheck "transparency" requirements on government contractors, again without statutory authorization.  In sum, the Executive Branch actions at issue in this Complaint are arbitrary and capricious, an abuse of agency discretion, and in violation of law, and must be set aside.

### Parties

8.      Plaintiff ABCSETX is a non-profit trade association of two hundred construction industry employers and related firms operating in Southeast Texas and around the country. Headquartered in this judicial district at 2700 N. Twin City Highway in Nederland, Texas, ABCSETX  is a separately incorporated affiliate of the national construction industry trade association Plaintiff Associated Builders and Contractors, Inc. ("ABC"). Plaintiff

ABC represents nearly 21,000 member contractors and related firms both in Texas and throughout the country, who share the philosophy that work in their industry should be awarded and performed on the basis of merit, without regard to labor affiliation. ABC and its 70 chapters help members develop people, win work and deliver that work safely, ethically and profitably for the betterment of the communities in which they work. ABC's membership represents all specialties within the U.S. construction industry and is comprised primarily of firms that perform work in the industrial and commercial sectors. ABCSETX and ABC as a whole represent many businesses that regularly bid on and are awarded government contracts exceeding the threshold amounts covered by the Executive Order, FAR Rule, and DOL Guidance, and they will be irreparably harmed unless these unlawful government actions are set aside.

9.      Plaintiff NASCO, a non-profit trade association, is the nation's largest contract security trade association, whose member companies employ more than 400,000 of the nation's most highly trained security officers servicing every business sector.  Founded in 1972, NASCO strives to increase awareness and understanding among policy-makers, consumers, the media and the general public of the important role of private security in safeguarding persons and property. At the same time, NASCO is the leading advocate for raising standards for the licensing of private security firms and the registration, screening, and training of security officers, and has collaborated with legislators and officials at every level of government to implement higher standards for companies and officers.  NASCO members provide security officers and other security related services to numerous federal agencies for the protection of a wide range of federal facilities and assets and the employees and visitors in those facilities. NASCO members regularly bid on and are awardees of government contracts exceeding the threshold amounts covered by the Executive Order, FAR Rule, and DOL Guidance, and they will be irreparably

harmed by these unlawful government actions unless they are set aside.

10.      As trade associations representing federal government contractors in Texas and around the country, Plaintiffs each have standing to bring this action on behalf of their members under the three-part test of *Hunt v. Washington State Apple Advertising Commission*, 432 U.S. 333, 343 (1977), because (1) Plaintiffs' members would otherwise have standing to sue in their own right; (2) the interests at stake in this case are germane to Plaintiffs' organizational purposes; and (3) neither the claims asserted nor the relief requested requires the participation of Plaintiffs' individual members.

11.      Defendants Anne Rung, Charles F. Bolden, Jr., Ashton Carter, and Denise T. Roth, are the statutorily designated Chair and Members of the Federal Acquisition Regulatory Council (the "FAR Council"). 41 U.S.C. § 1302(b)(1)(C). The FAR Council is a federal agency charged with assisting in the direction and coordination of Government-wide procurement policy and Government-wide procurement regulatory activities in the Federal Government, in accordance with the Office of Federal Procurement Policy ("OFPP") Act, 41 U.S.C § 1301, *et seq*. The FAR Council published the new Rule in the Federal Register. Ms. Rung, Mr. Bolden, Mr. Carter, and Ms. Roth are sued in their official capacities as the chief officials of OFPP, NASA, Department of Defense, and GSA. The relief sought extends to the agencies that these officials represent and all of their successors, officers, employees, and agents.

12.      Defendant Thomas E. Perez is the Secretary of the United States Department of Labor (the "Secretary"). DOL published the Guidance regarding the new FAR Rule in the Federal Register. Secretary Perez is sued in his official capacity and the relief sought extends to all of his successors, employees, officers, and agents.

## Jurisdiction and Venue

13.     This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §

1331 (federal question) because the Plaintiffs' causes of action arise under and allege violations

of federal law, including: the U.S. Constitution, the Administrative Procedure Act ("APA"), 5

U.S.C. §§ 701-706 (APA jurisdiction to review agency actions); the Declaratory Judgment Act,

28 U.S.C. §§ 2201-2202 (declaratory and injunctive relief); the Office of Federal Procurement

Policy Act ("OFPPA"), 42 U.S.C. §§ 410, *et seq.*, and each of the fourteen federal labor and

employment laws incorporated by reference in the Executive Order, the FAR Rule, and the DOL

Guidance, as further discussed below.

14.     This Court has authority to grant declaratory and injunctive relief pursuant to 28

U.S.C. §§ 2201-02 and the provisions of the APA, 5 U.S.C. §§ 701-06.

15.     Venue is properly vested in this Court pursuant to 28 U.S.C. § 1391(e) because

one or more of the Plaintiffs are based within the judicial district of this Court.

## Government Contractor Reporting and Responsibility Requirements
## Prior To The New Rules

16.     Prior to the issuance of the New Rules, federal agencies seeking to retain services

from private contractors were empowered under the Federal Property and Administrative

Services Act ("FPASA"), 40 U.S.C. § 101, *et seq.*, and 41 U.S.C. § 1101, *et seq.*, to consider

competitive proposals from private contractors and to "award a contract with reasonable

promptness to the responsible source whose proposal is most advantageous to the Federal

Government, considering only cost or price and the other factors included in the solicitation." 41

U.S.C. § 3703. The FPASA authorizes the President to "prescribe policies and directives that the

President considers necessary to carry out [the Act]," but cautions that "The policies must be consistent with [the Act]." *See Chamber of Commerce v. Reich*, 74 F.3d 1322, 1333 (D.C. Cir. 1996) (describing the limits on executive authority under the FPASA).

17.    The specific rules governing the federal government's acquisition processes are set forth in the Federal Acquisition Regulations System ("FARS").  48 C.F.R. 1, *et seq.*  Pursuant to the FARS, in order to be determined a "responsible" contractor eligible to enter into a service contract with a federal government agency, a prospective contractor must have "adequate financial resources to perform the contract, or the ability to obtain them"; be "able to comply with the required or proposed delivery or performance schedule, taking into consideration all existing commercial and governmental business commitments"; have "a satisfactory performance record"; have "a satisfactory record of integrity and business ethics"; have "the necessary organization, experience, accounting and operational controls, and technical skills, or the ability to obtain them (including, as appropriate, such elements as production control procedures, property control systems, quality assurance measures, and safety programs applicable to materials to be produced or services to be performed by the prospective contractor and subcontractors)"; have "the necessary production, construction, and technical equipment and facilities, or the ability to obtain them"; and "be otherwise qualified and eligible to receive an award under applicable laws and regulations."  48 C.F.R. 9.104-1.

18.    Under the FARS, a federal contracting officer generally obtains information regarding the "responsibility" of a putative contractor "when necessary, promptly after a bid opening or receipt of offers."  48 C.F.R. 9.105-1.  In "negotiated contracting," the contracting officer "may obtain this information before issuing the request for proposals. *Id*.

19.    Prior to the issuance of the new Executive Order and the FAR Rule, federal

government agencies' contracting officers generally restricted their exercise of the power to ensure that potential contractors were "responsible" and eligible to enter service contracts to those circumstances where contractors or subcontractors were found to have committed serious crimes or acts of fraud or similarly serious civil matters.  As conceded in the preamble to the new FAR Rule, it was recognized that "contracting officers generally lack the expertise and tools to assess the severity of the labor law violations brought to their attention and therefore cannot easily determine if a contractor's actions show a lack of integrity and business ethics." 81 Fed. Reg. at 58564.  For each of these reasons, federal agencies prior to the new Executive Order rightly focused on contractor transgressions that were directly correlated to contract performance, and that clearly demonstrated lack of integrity and business ethics. In addition, courts have required contracting officers to afford due process rights to contractors accused of ethics violations, rather than relying on un-adjudicated administrative determinations.  *See Old Dominion Dairy Prods., Inc. v. Sec'y of Def.*, 631 F.2d 953 (D.C. Cir. 1980).

20.     Where Congress has chosen to authorize suspension or debarment of government contractors, it did so expressly in a narrow category of laws directly applicable to government contracts, and even then only after final adjudications of alleged violations by the Department of Labor, subject to judicial review, with full protection of contractors' due process rights. Moreover, rather than attempting to determine contractor responsibility or integrity based on mere complaints or ongoing litigation in areas of law where agency contracting officers themselves lack judgmental expertise, such determinations were generally made only upon reports of final adjudications proving violations that called into question the ethical ability of contractors to perform government contracts.

### Executive Order 13673

21.     On July 31, 2014 President Barack Obama issued Executive Order 13673.  The Executive Order purports to "increase efficiency and cost savings in the work performed by parties who contract with the Federal Government by ensuring that they understand and comply with labor laws." On August 23, 2016, President Obama issued an amendment to Executive Order 13673.

22.     As amended, the Executive Order requires  that "[f]or procurement contracts for goods and services, including construction, where the estimated value of the supplies acquired and services required exceeds $500,000, each agency shall ensure that provisions in solicitations require that the offeror represent, to the best of the offeror's knowledge and belief, whether there has been any administrative merits determination, arbitral award or decision, or civil judgment, as defined in guidance issued by the Department of Labor, rendered against the offeror within the preceding 3-year period for violations of any of the following labor laws and Executive Orders (labor laws)": (1) the Fair Labor Standards Act; (2) the Occupational Safety and Health Act of 1970; (3) the Migrant and Seasonal Agricultural Worker Protection Act; (4) the National Labor Relations Act; (5) the Davis-Bacon Act; (6) the Service Contract Act; (7) Executive Order 11246 of September 24, 1965 (Equal Employment Opportunity); (8) Section 503 of the Rehabilitation Act of 1973; (9) the Vietnam Era Veterans' Readjustment Assistance Act of 1974; (10) the Family and Medical Leave Act; (11) Title VII of the Civil Rights Act of 1964; (12) the Americans with Disabilities Act of 1990; (13) the Age Discrimination in Employment Act of 1967; (14) Executive Order 13658 of February 12, 2014 (Establishing a Minimum Wage for Contractors); (15) "equivalent State laws, as defined in guidance issued by the Department of Labor."

23.     The Executive Order mandates that an agency's contracting officer, prior to making an award, "shall, as part of the responsibility determination, provide an offeror with a disclosure . . . an opportunity to disclose any steps taken to correct the violations of or improve compliance with the labor laws . . ., including any agreements entered into with an enforcement agency."   Pursuant to the Executive Order, contracting officers are required to consider the information provided by the offeror in determining "whether an offeror is a responsible source that has a satisfactory record of integrity and business ethics, after reviewing the guidelines set forth by the Department of Labor and consistent with any final rules issued by the Federal Acquisition Regulatory (FAR) Council," notwithstanding the fact that the "violations" that require such reporting may not be final decisions or determinations, thereby rendering many contractors with reporting obligations "guilty until proven innocent."

24.     The Executive Order requires that for any subcontract where the estimated value of the supplies acquired and services required exceeds $500,000, subcontractors are required to disclose any administrative merits determination, arbitral award or decision, or civil judgment rendered against the subcontractor within the preceding 3-year period for violations of any of the requirements of the labor laws identified in the Executive Order, and update the information every 6 months.

25.     In the event that information regarding alleged violations of labor laws is brought to the attention of a contracting officer, Section 2 of the Executive Order allows the contracting officer to take action against the purported violating contractor or subcontractor, including demands that the contractor enter into "agreements requiring appropriate remedial measures, compliance assistance, and resolving issues to avoid further violations, as well as remedies such as decisions not to exercise an option on a contract, contract termination, or referral to the agency

suspending and debarring official." To make such determinations, Section 2 further requires contracting officers to consult with newly created "Agency Labor Compliance Advisors" (ALCAs).

26.     Section 4 of the Executive Order further requires DOL to issue guidance to assist agencies in determining whether the disclosed determinations were issued for "serious, repeated, willful, or pervasive violations" of the fourteen labor laws. The concepts of "serious, repeated, and willful" violations appear in the OSH Act and to a limited extent under the FLSA, but are inconsistent with the descriptions of violations under the other laws cited in the Executive Order. The reference to "pervasive" violations is entirely an invention of the Executive Order and does not appear in any of the fourteen labor laws cited therein.

27.     The Executive Order further provides that contractors and subcontractors who enter into contracts for non-commercial items over $1 million must agree not to enter into any mandatory pre-dispute arbitration agreement with their employees or independent contractors on any matter arising under Title VII of the Civil Rights Act, as well as any tort related to or arising out of sexual assault or harassment.

28.     The Executive Order also requires for the first time that all covered contractors inform their employees in each paycheck of their number of hours worked, overtime calculations (for non-exempt employees), rates of pay, gross pay and additions or deductions from pay and declare whether the individuals being paid are classified as employees or independent contractors.

29.     Section 4 of the Executive Order requires the FAR Council to "propose such rules and regulations and issue such orders as are deemed necessary and appropriate to carry out [the Executive Order], and shall issue final regulations in a timely fashion after considering all public

comments, as appropriate."

30.     The Executive Order further mandates that the DOL "develop guidance, in consultation with the agencies responsible for enforcing the requirements of the labor laws listed in [the Executive Order], to assist agencies in determining whether administrative merits determinations, arbitral awards or decisions, or civil Sjudgments were issued for serious, repeated, willful, or pervasive violations of these requirements for purposes of implementation of any final rule issued by the FAR Council pursuant to [the Executive Order]."

### The FAR Council's New Rule Implementing The Executive Order

31.     On May 28, 2015, the FAR Council published in the Federal Register a Notice of Proposed Rulemaking, entitled "Federal Acquisition Regulation; Fair Pay and Safe Workplaces," implementing the Executive Order.  80 Fed. Reg. 30548.  On August 25, 2016, following public comment, including oppositions filed by Plaintiffs and/or their affiliated associations and members, the FAR Council published a largely unchanged version of the original proposal as the Final Rule that is being challenged in this Complaint.

32.     As called for by the Executive Order, but in violation of the Constitution and other applicable laws, the FAR Council's new Rule requires federal contractors and subcontractors for the first time to disclose any "violations" of the federal labor laws which any agency, arbitrator, or court has found to have occurred in conjunction with any bid/offer responding to any procurement for federal government contracts/subcontracts exceeding $500,000, in addition to requiring updated disclosures of alleged labor law violations every six months while performing covered government contracts.  The new Rule requires such disclosure even in the absence of a final decision or determination of a labor law violation, as further discussed below.

33.    The FAR Council's new Rule requires contractors/subcontractors to include among their disclosed violations a list of court actions, arbitrations, and "administrative merits determinations," including so-called violations that have not yet been fully adjudicated in the courts. The new FAR Rule incorporates by reference the DOL Guidance, discussed below, which specifies what sorts of agency, arbitrator, and court actions will have to be publicly disclosed.

34.    Based upon such compelled disclosures, the new Rule requires each contracting agency's contracting officers to determine whether companies' reported violations of the identified labor laws render such offerors "non-responsible" based on "lack of integrity and business ethics."

35.    The FAR Council's new Rule, like the Executive Order, requires each contracting agency to designate an agency labor compliance advisor to assist contracting officers in determining whether a company's actions rise to the level of a lack of integrity or business ethics.

36.    The new Rule also requires each contractor/subcontractor who is forced to report violations of labor laws to demonstrate "mitigating" efforts and/or enter into remedial agreements or else be subject to a finding of non-responsibility for contract award, suspension, debarment, contract termination, or nonrenewal.

37.    The FAR Council's new Rule further provides that contractors and subcontractors who enter into contracts for non-commercial items over $1 million agree not to enter into any mandatory pre-dispute arbitration agreement with their employees or independent contractors on any matter arising under Title VII of the Civil Rights Act, as well as any tort related to or arising out of sexual assault or harassment.

38.    Absent injunctive relief by this Court, the stated effective date of the FAR

Council's new Rule implementing the Executive Order is October 25, 2016.  For the first six months following such implementation, from October 25, 2016 to April 24, 2017, prime contractors need only make disclosures on solicitations (and resulting contracts) with an estimated value of $50 million or more.  Starting on April 25, 2017, the prime contractor disclosure requirements will apply to all solicitations (and resulting contracts) with an estimated value of greater than $500,000.  Starting on October 25, 2017, subcontractor disclosures are required for any solicitation (or resulting subcontract) valued at greater than $500,000.

**The Department of Labor's Guidance Implementing The Executive Order**

39.      In conjunction with the FAR Council rulemaking described above, on May 28, 2015, DOL published in the Federal Register "Guidance for Executive Order 13673; 'Fair Pay and Safe Workplaces,'" proposing guidance to assist federal agencies with the implementation the Executive Order.  80 Fed. Reg. 30574.  On August 25, 2016, following public comment, including oppositions filed by Plaintiffs and/or their affiliated associations and members, DOL published a largely unchanged version of the original proposed Guidance.

40.      The DOL Guidance purports to define "administrative merits determinations" that must be disclosed in accordance with the new FAR Council Rule. They include the following non-final determinations by DOL for laws enforced by DOL's Wage and Hour Division:

- a WH-56 "Summary of Unpaid Wages" form;

- a letter indicating that an investigation disclosed a violation of ANY provision of the FLSA, or a violation of the FMLA, SCA, DBA, or Executive Order 13658;

- a WH-103 "Employment  of Minors Contrary to The Fair Labor Standards Act" notice;

- a letter, notice, or other document assessing civil monetary penalties;

- a letter that recites violations concerning the payment of special minimum wages to workers with disabilities under section 14(c) of the FLSA or revokes a certificate that authorized the payment of special minimum wages.

41.     For alleged violations of the Occupational Safety and Health Act, DOL's Guidance states that the following non-final determinations must be publicly disclosed by covered contractors and subcontractors:

- a WH-561 "Citation and Notification of Penalty" for violations under the OSHA's field sanitation or temporary labor camp standards; or

- an order of reference filed with an administrative law judge.

- any citation issued Occupational Safety and Health Administration (OSHA) or any state agency designated to administer an OSHA-approved state plan:

- an imminent danger notice;

- a notice of failure to abate; or

- any state equivalent.

42.     For alleged violations of laws enforced by the Office of Federal Contract Compliance Programs (OFCCP), DOL's Guidance states that covered contractors must publicly disclose the following non-final determinations:

- a show cause notice for failure to comply with the requirements of Executive Order 11246, Section 503 of the Rehabilitation Act, the Vietnam Era Veterans' Readjustment Assistance Act of 1972, or the Vietnam Era Veterans' Readjustment Assistance Act of 1974.

43.     For alleged violations of discrimination laws enforced by the Equal Employment Opportunity Commission (EEOC), DOL's Guidance states that covered contractors must

disclose any non-final letter of determination that reasonable cause exists to believe that an unlawful employment practice (including retaliation) has occurred or is occurring.

44.     For any alleged violation of the National Labor Relations Act, DOL's Guidance states that covered contractors must publicly disclose any complaint against them issued by a Regional Director of the National Labor Relations Board (NLRB):

45.     For all other alleged violations handled by administrative agencies, DOL's Guidance states that covered contractors must disclose:

- any complaint filed by or on behalf of an enforcement agency with a federal or state court, an administrative judge, or an administrative law judge alleging that the contractor or subcontractor violated any provision of the labor laws; or

- any order or finding from any administrative judge, administrative law judge, the DOL's Administrative Review Board, the Occupational Safety and Health Review Commission or state equivalent, or the National Labor Relations Board, that the contractor or subcontractor violated any provision of the labor laws.

46.     The DOL's Guidance further defines the terms ''serious,'' ''repeated,'' 'willful,'' and ''pervasive'' for all of the above referenced labor law violations, and provides guidance on their meanings and how violations of the designated labor laws should be weighed pursuant to the FAR Council's new Rule.

47.     DOL's definitions are vague and inconsistent with the statutory language of the labor laws themselves, leaving contracting officers and labor compliance advisors substantial discretion to assess violations. For example, the Guidance provides that to determine whether a violation is "willful," the "focus is on whether the enforcement agency, court, arbitrator, or arbitral panel's findings support a conclusion that, based on all of the facts and circumstances

discussed in the findings, the contractor or subcontractor acted with knowledge or reckless disregard of its legal requirements."

### The Federal Labor Laws That Are The Subjects Of The New Rules

48.     The federal labor laws incorporated by reference in the New Rules each contain their own specific remedial schemes, carefully defined by Congress and/or separate Executive Orders, as follows:

49.     The National Labor Relations Act ("NLRA"), 29 U.S.C., § 151, *et seq.*, designates the National Labor Relations Board ("NLRB") as the sole and exclusive authority to address and remedy any claimed violations of the National Labor Relations Act ("NLRA"). Section 10(c) of the NLRA restricts the NLRB itself to issuing "make whole," non-punitive remedial orders tailored to the unfair labor practices being redressed.  29 U.S.C. § 160(c).  The Supreme Court has expressly held that the NLRA preempts efforts to disqualify employers from performing government contracts based upon violations of the NLRA. *Wisconsin Dept. of Ind. v. Gould*, 475 US. 282 (1986) (invalidating state ineligibility law tied to violations of the NLRA); see also *Chamber of Commerce v. Reich*, 74 F.3d 1322, 1333 (D.C. Cir. 1996) (applying the principles of *Gould* to invalidate a Presidential Executive Order).

50.     The Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, establishes minimum wage, overtime pay, recordkeeping, and youth employment standards affecting employees in the private sector and in Federal, State, and local governments.  Depending on the violation, the FLSA permits both civil awards and criminal prosecution and fines, but does not authorize debarment or disqualification of government contractors for violations of the Act. *See* 29 U.S.C. § 201, § 216.

51.     The Occupational Safety and Health ("OSH") Act imposes a number of civil

sanctions for violations of that law, including designation of separate levels of penalties for serious, repeated, and willful violations. 29 U.S.C. § 666.  The Occupational Safety and Health Review Commission is designated as the only administrative authority authorized to determine whether violations of the OSH Act have occurred, subject to judicial review.

52.    Title VII of the Civil Rights Act ("Title VII") allows for equitable and make-whole relief (including reinstatement and back pay), attorney's fees, and punitive damages, depending on the nature of the violation.  42 U.S.C. § 2000e-5(f), (k); 43 U.S.C. § 1981a. Congress has never authorized debarment or disqualification of contractors for violations of the Civil Rights Acts. Rather, Congress specifically prohibited federal agencies from denying government contracts under "any equal employment opportunity law or order," if an appropriate affirmative action plan is in place. 42 U.S.C. § 2000e-17.  The vast majority of government contractors are required to have such affirmative action plans in place under Executive Order 11246, and therefore they cannot lawfully be disqualified from federal contracts for violations of the Act. Neither the Executive Order, the FAR Rule nor the DOL Guidance acknowledged or addressed this provision.

53.    The Americans with Disabilities Act ("ADA") allows for equitable and make-whole relief (including reinstatement and back pay), attorney's fees, and punitive damages, depending on the nature of the violation.  42 U.S.C. § 12117.  Congress has never authorized debarment or disqualification of government contractors for violations of this statute.

54.    The Family and Medical Leave Act ("FMLA") expressly provides for equitable and make-whole relief, compensatory damages up to 12 weeks of the employee's wages, and, if the employer acted in bad faith, liquidated damages.  29 U.S.C. § 2617(a)(1).  Congress has never authorized debarment or disqualification of government contractors for violations of this

statute.

55.     The Age Discrimination in Employment Act ("ADEA") expressly provides for equitable and make-whole relief, in addition to attorney's fees.  29 U.S.C. § 2617(a)(1).  If the employer commits a "willful" violation of the ADEA, the plaintiff may recover liquidated damages.  29 U.S.C. § 626(b).  Congress has never authorized debarment or disqualification of government contractors for violations of this statute.

56.     The Migrant and Seasonal Agricultural Worker Protection Act ("MSAWPA") and the regulations implementing it permit civil awards the amount of which depends on several factors. *See* 29 C.F.R. § 500.143.  See also 29 U.S.C. § 1853(a)(2).  Administrative actions under the MSAWPA include sanctions of up to $1,000 per violation and, concerning farm labor contractors, revocation or suspension of existing certificates and denial of future certificates of registration.   The Secretary of Labor can initiate both court injunctions to prohibit further violations in addition to criminal charges.   Courts can assess fines up to $10,000 and prison terms of up to three years.  The statute also permits private causes of action in federal court for damages.  29 U.S.C. §§ 1851-1855, 1862, 1872.  Congress has never authorized debarment or disqualification of government contractors for violations of this statute.

57.     The Davis-Bacon Act and Service Contract Act provide that violators may have payments on their contracts withheld or be debarred for a period of three years, but only after a hearing has been held in which the DOL proves a "willful" or "aggravated" violation.  40 U.S.C § 3144; 29 C.F.R. § 5.12.; 41 USC 6701; 29 C.F.R. 4.188  These Acts also allow a debarred contractor or subcontractor, six months after debarment, to request that the Administrator of the Wage and Hour Division permit it to contract with the government.   The Administrator considers, among other factors, the contractor or subcontractor's "severity of the violations, the

contractor or subcontractor's attitude towards compliance, and the past compliance history of the firm." If the Administrator denies the contractor's request, the contractor can petition for review by the Administrative Review Board.   29 C.F.R. § 5.12(c).   The new FAR Rule and DOL Guidance improperly conflict with the Davis-Bacon and Service Contract Acts and the DOL's longstanding regulations while denying contractors their right to due process.

58.     Contractors that violate Section 503 of the Rehabilitation Act may be debarred under aggravated circumstances from receiving future contracts or terminated from ongoing government work. However, a contractor is entitled to a formal hearing before any of these sanctions can be imposed.   41 C.F.R. § 60-741.66(a-d).   The Executive Order, FAR Rule and DOL Guidance improperly conflict with the Rehabilitation Act and its longstanding regulations while denying contractors their right to due process.

59.     Contractors that violate the Vietnam Era Veterans' Readjustment Assistance Act of 1974  ("VEVRA") may be debarred under aggravated circumstances from receiving future contracts or terminated from ongoing government work. However, a contractor is entitled to a formal hearing before any of these sanctions can be imposed.   41 C.F.R. § 60-300.66(a-d).   The Executive Order, FAR Rule, and Guidance regarding the Rule improperly conflict with the VEVRA and its longstanding regulations while denying contractors their right to due process.

60.     Contractors that violate Executive Order 11246 of September 24, 1965 (Equal Employment Opportunity) may be debarred under aggravated circumstances from receiving future contracts or terminated from ongoing government work. However, a contractor is entitled to a formal hearing before any of these sanctions can be imposed.   41 C.F.R. § 60-1.27(a-b) ("Sanctions"); Executive Order 11246 §§ 208(b), 303(c).   The new Executive Order, FAR Rule, and DOL Guidance regarding the Rule improperly conflict with Executive Order 11246 while

denying contractors their right to due process.

61.     Contractors who violate Executive Order 13658 of February 12, 2014 (Establishing a Minimum Wage for Contractors) may be deemed ineligible by the Secretary of Labor to be awarded any contract or subcontract for up to three years, but only after "an opportunity for a hearing before an Administrative Law Judge."  29 C.F.R. § 10.44(c).  The Executive Order, FAR Rule, and Guidance improperly dispense with the hearing requirement set forth in Executive Order 13658 and 29 C.F.R. § 10.44(c).


## COUNT ONE

**The Executive Order, FAR Rule, and DOL Guidance, Separately and Together, Are Unlawful Because They Exceed The President's, FAR Council's, And DOL's Authority**

62.     Paragraphs 1 through 60 are incorporated by reference as if set forth fully herein.

63.     The Administrative Procedure Act, 5 U.S.C. § 706(2)(C) directs reviewing courts to "hold  unlawful and set aside agency action, findings, and conclusions  found to be … in excess of statutory jurisdiction,  authority,  or limitations,  or short of statutory right."

64.     Congressional delegation of rulemaking authority to the Executive Branch is delimited by the literal language of enabling statutes.  *See Chevron U.S.A., Inc. v. Natural Resources Defense Council*, 467 U.S. 837 (1984).  The President's rulemaking authority is prescribed within the confines of the FPASA, which establishes the limited rulemaking power within which the President must operate.  No such delegation of authority can be presumed by the President. *State of Texas v. U.S. Dept. of Interior,* 497 F. 3d 491, 502 (2007).

65.     In issuing Executive Order 13673, the President has ignored the boundaries of the authority Congress delegated him in the FPASA; and invalidly seeks and exercises authority Congress explicitly refused to grant the President. Such action exceeds the President's

statutory and non-statutory authority and is therefore contrary to law and invalid. *See Chamber of Commerce v. Reich*, 74 F.3d 1322.

66.     The President's unlawful Executive Order has been enforced by his officers.  The FAR Council, a federal agency operating within the Executive Branch, has implemented the President's unlawful Executive Order by issuing the new Rule.  The DOL, a federal agency operating within the Executive Branch, has implemented the President's unlawful Executive Order by issuing the Guidance regarding the new Rule.  Therefore, the Executive Order may be challenged by Plaintiffs.  *See Chamber of Commerce v. Reich*, 74 F.3d at 1324 (D.C. Cir. 1996) (permitting a challenge to the constitutionality of an executive order based on the DOL's implementation of a rule enforcing the unconstitutional executive order).

67.     The FAR Council's rulemaking authority is prescribed within the confines of the OFPP Act and the FPASA, which establish the limited rulemaking power within which the FAR Council must operate.  No delegation of authority to issue the presently challenged new Rules can be presumed by the agency. *State of Texas v. U.S. Dept. of Interior,* 497 F. 3d 491, 502 (5th Cir. 2007).

68.     In promulgating the Final Rule, the FAR Council has ignored the boundaries of the authority Congress delegated it in the OFPP Act; and invalidly seeks and exercises authority Congress explicitly refused to grant Defendants.  Such action exceeds the FAR Council's statutory authority and is therefore contrary to law and invalid.

69.     In promulgating the Guidance regarding the Final Rule, the DOL has ignored or contradicted the boundaries of the authority Congress delegated to the President in the FPASA and the boundaries of authority Congress delegated to the FAR Council it in the OFPP Act and the FPASA. Such action exceeds the DOL's statutory authority and is therefore contrary to law

and invalid.

## COUNT TWO

### The Executive Order, FAR Rule, and DOL Guidance Are Preempted By and Otherwise Violate the Plain Language of Fourteen Federal Labor And Employment Laws

70.     Paragraphs 1 through 69 are incorporated by reference as if set forth fully herein.

71.     The NLRA, the FLSA, the OSH Act, Title VII, the ADA, the FMLA, the ADEA, the MSAWPA, the Davis-Bacon Act, the Service Contract Act, Section 503 of the Rehabilitation Act, the VEVRA, Executive Order 11246, and Executive Order 13658 each contain a comprehensive, carefully balanced remedial scheme.

72.     It is well established that "[w]hen the remedial devices provided in a particular Act are sufficiently comprehensive, they may suffice to demonstrate congressional intent to preclude the remedy of suits under [other federal laws]." *See, e.g., Middlesex Cnty Sewerage Auth. v. Nat'l Sea Clammers Ass'n,* 453 U.S. 1, 20-21 (1981).  The remedial devices set forth in the fourteen federal labor laws set forth in the Executive Order and Rule are sufficiently comprehensive such that the remedies set forth in the Executive Order, Rule, and Guidance are precluded as a matter of law.

73.     Such action exceeds the President's, the FAR Council's, and the DOL's statutory authority, violates the Constitutional principle of separation of powers, and is therefore contrary to law and invalid.

## COUNT THREE

**The Executive Order, FAR Rule, and DOL Guidance Violate the First Amendment
(Compelled Speech)**

74.     Paragraphs 1 through 72 are incorporated by reference as if set forth fully herein.

75.     The First Amendment of the United States Constitution prohibits the government from infringing on Plaintiffs' right of Freedom of Speech.

76.     The challenged Executive Order, Rule, and Guidance infringe on Plaintiffs' right of Freedom of Speech by requiring contractors and subcontractors interested in performing work pursuant to a federal government contract to include among their reported "violations" an unprecedented list of non-final court actions, arbitrations, and "administrative merits determinations," even where there has been no final adjudication of any violation at all, and even if the contractor and/or subcontractor is contesting whether the alleged violation(s) occurred in the first place or has settled the allegations without a final adjudication.   Effectively, the Executive Order, Rule, and Guidance compel government contractors and subcontractors to publicly condemn themselves on a highly controversial issue by stating that they have been found to have violated one or more labor or employment laws even in the absence of any final adjudication of the merits regarding the alleged violation in the courts.

77.     The government interests purporting to justify this compelled speech, and the effectiveness of the Executive Order, Rule, and Guidance in advancing any such interests, are entirely speculative and inadequate to justify the infringement of contractors' First Amendment rights. As such, the Executive Order, Rule, and Guidance infringe on contractors' rights under the First Amendment because they coerce speech on the part of the contractors and subcontractors who wish to perform the work. *See National Association of Manufacturers v. SEC,* 800 F.3d 518 (D.C. Cir. 2015), *rehearing en banc den.*, 2015 U.S. App. LEXIS 19539

(D.C. Cir. Nov. 9, 2015); *See also Oscar Renda Contracting, Inc. v. City of Lubbock, Tex.*, 463 F.3d 378 (5th Cir. 2006) (applying First Amendment protections to government contractors and bidders).

78.     The foregoing violations of the First Amendment rights of Plaintiffs' government contractor members, if allowed to go into effect, will cause irreparable harm to them that is both imminent and certain, calling for injunctive relief.  *Elrod v. Burns*, 427 U.S. 347, 373 (1976).

## COUNT FOUR

### The Executive Order, Rule, and Guidance Violate The Due Process Clause

79.     Paragraphs 1 through 76 are incorporated by reference as if set forth fully herein.

80.     The Executive Order, FAR Rule, and DOL Guidance purport to authorize contracting officers to disqualify government contractors including Plaintiffs' members from being awarded or performing public contracts based on alleged "violations" of fourteen labor laws, even though no hearing may have been held and no final adjudication of any violation has been determined by either a federal agency or a court. Such government conduct has been held to injure the liberty interests of government contractors, i.e., their right to be free from stigmatizing governmental defamation. *See Old Dominion Dairy Prods., Inc. v. Sec'y of Def.*, 631 F.2d 953 (D.C. Cir. 1980).

81.     The Executive Order, Rule, and Guidance thereby deprive government contractors of their liberty interests without due process of law in violation of Article V of the Constitution. Such harm is irreparable in nature and is both imminent and certain, calling for injunctive relief.

## COUNT FIVE

### The FAR Rule, and DOL Guidance Are Arbitrary and Capricious

82.     Paragraphs 1 through 79 are incorporated by reference as if set forth fully herein.

83.     The Administrative Procedure Act, 5 U.S.C. § 706(2)(A), directs reviewing courts to "hold  unlawful and set aside agency action, findings, and conclusions  found to be . . . arbitrary and capricious,  an abuse of discretion,  or otherwise  not in accordance with law."

84.     The challenged Rule and Guidance are preempted or contradicted by longstanding labor laws.  The FAR Council and the DOL have also failed to give an adequate  explanation for imposing the drastic new requirements set forth in the Rule and Guidance. *See Encino Motorcars v. Navarro*, 136 S. Ct. 2117 (June 20. 2016) (giving no deference to agencies that change course without taking cognizance of "reliance interests" of the regulated community; and where the policy reversal results in "unexplained inconsistencies.").

85.     The Rule and Guidance do not adequately explain other than through sheer speculation how compelled disclosure of "administrative merits determinations" – including those that are still being contested or settled without a hearing – demonstrate any degree of business integrity sufficiently lacking to affect the government's responsibility determinations. The evidence cited in the Rule and Guidance for this claim certainly does not support it, and such alleged labor law violations have never previously been deemed to support disqualification from government contracting in the absence of a hearing and final adjudication of specific statutory provisions.

86.     The Rule and Guidance impose significant additional costs and expenses on Plaintiffs and their members as contractors will incur substantial cost in "looking back" at their "violations" for a period of three years before a contract is offered, which then must be updated

every six months.  These new costs will require many Plaintiffs' members to charge higher prices, which may put them at a competitive disadvantage for government bids. The President, FAR Council, and DOL have grossly underestimated the cost to the government and taxpayers as well and the harm to the procurement process that will be caused by the byzantine and cumbersome new procedures and bureaucracy that will now be needed to award and administer government contracts.

87.     The challenged Rule also requires for the first time that contractors provide a document informing individuals of their independent contractor status, in addition to a wage statement. However, the DOL's Guidance acknowledges that the determination of independent contractor status under a particular law is governed by that law's definition of "employee", thereby, leaving employers uncertain as to what definition should be used.  *See* 81 Fed. Reg. at 58713. In addition, contractors may be subjected to charges of committing an unfair labor practice if they communicate incorrectly the classification of an employee as an independent contractor under the National Labor Relations Act, according to a recent statement by the General Counsel of the NLRB. For these reasons as well, the challenged Rule and Guidance must be held unlawful and set aside.

## COUNT SIX

**The Executive Order and FAR Council Rule Violate The Federal Arbitration Act**

88.     Paragraphs 1 through 83 are incorporated by reference as if set forth fully herein.

89.     The Executive Order and the Rule provide that that contractors and subcontractors who enter into contracts for non-commercial items over $1 million agree not to enter into any mandatory pre-dispute arbitration agreement with their employees or independent contractors on any matter arising under Title VII of the Civil Rights Act, as well as any tort related to or arising

out of sexual assault or harassment.

90.     The Federal Arbitration Act ("FAA") provides that "[a] written provision in any maritime transaction or contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  This provision establishes "a liberal federal policy favoring arbitration agreements."  *Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983).

91.     The FAA "requires courts to enforce agreements to arbitrate according to their terms."  *CompuCredit Corp. v. Greenwood*, 132 S. Ct. 665, 669 (2012); *American Express Co. v. Italian Colors Restaurant*, 133 S. Ct. 2304, 2312, n. 3 (2013).  The Court emphasized in *CompuCredit* that this requirement applies "even when the claims at issue are federal statutory claims, unless the FAA's mandate has been overridden by a contrary congressional command." 132 S. Ct. at 669 (citations omitted).  The Court stressed that a "congressional command" must be found in an unambiguous statement in the statute, and cannot be gleaned from ambiguous statutory language.  *Id*. at 670-73.

92.     The new prohibition against lawful arbitration agreements has no true connection to government economy and efficiency but instead seeks a policy objective contrary to Congressional intent and Supreme Court authority. By prohibiting the arbitration of certain claims arising under Title VII of the Civil Rights Act, as well as any tort related to or arising out of sexual assault or harassment, in the absence of any congressional command that would override the requirement that arbitration agreements be enforced in accordance with their terms, the Executive Order and the Rule violate the FAA.

## REQUESTS FOR RELIEF

93.     Plaintiffs ask that the Court enter a preliminary injunction pending a final decision on the merits, enjoining Defendants from implementing the challenged Executive Order, Rule, and Guidance in all jurisdictions where Plaintiffs' members and the U.S. government do business, *i.e.*, nationwide. *See Texas v. United States*, 809 F.3d 134, 188 (5th Cir. 2015); see also Texas v. U.S., 787 F.3d 733 (5th Cir. 2015).  Plaintiffs are likely to succeed on the merits of their claims; their members will suffer irreparable harm under the First and Fifth Amendments to the U.S. Constitution in the absence of an injunction; Defendants will suffer no harm by any delay to their burdensome new policies; and the public interest in the rule of law strongly supports Plaintiffs' claims for relief in order to maintain the status quo as it has existed for many decades pending a ruling on the merits.

94.     Plaintiffs further ask that the Court enter a declaratory judgment as to each of the Counts set forth above declaring that the challenged Executive Order, Rule, and Guidance are invalid; and that the Court

95.     Enter an order vacating the challenged Executive Order, Rule, and Guidance and permanently enjoining Defendants from implementing them;

96.     Award Plaintiffs their costs and expenses, including reasonable attorneys' fees under the Equal Access to Justice Act or otherwise; and

97.     Award such other further and additional relief as is just and proper.

Dated October 7, 2016     Respectfully submitted,

*/s/G. Mark Jodon*
G. Mark Jodon

LITTLER MENDELSON, P.C.
A Professional Corporation
1301 McKinney St., Suite 1900
Houston, TX 77010
(713) 652-4739
(713) 513-5963 (Fax)
mjodon@littler.com

Maurice Baskin (pro hac vice pending)
LITTLER MENDELSON, P.C.
815 Connecticut Ave., N.W.
Washington, D.C. 20006
(202) 202-772-2526
mbaskin@littler.com

ATTORNEYS FOR PLAINTIFFS