**UNITED STATES DISTRICT COURT**  **EASTERN DISTRICT OF TEXAS**

| | | |
|---|---|---|
| ASSOCIATED BUILDERS AND CONTRACTORS OF SOUTHEAST TEXAS, *et al.*, | § § § § | |
| Plaintiffs, | § § | |
| *versus* | § § | CIVIL ACTION NO. 1:16-CV-425 |
| ANNE RUNG, *Administrator, Office of Federal Procurement Policy, Office of Management and Budget*, *et al.*, | § § § § | |
| Defendants. | § § | |

## MEMORANDUM AND ORDER
## GRANTING PRELIMINARY INJUNCTION

Pending before the court is Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction (#4) in which they seek to enjoin the implementation of Executive Order 13673 along with the enforcement of a certain Federal Acquisition Regulations ("FAR") and corresponding guidance from the United States Department of Labor ("DOL").  *See* Federal Acquisition Regulation, "Fair Pay and Safe Workplaces," 81 Fed. Reg. 58562 (Aug. 25, 2016) (to be codified at 48 C.F.R. pts. 1, 4, 9, 17, 22, 42, and 52); Guidance for Executive Order 13673, "Fair Pay and Safe Workplaces," 81 Fed. Reg. 58654 (Aug. 25, 2016) (to be codified at 48 C.R.F. pts. 22 and 52).  Having considered the motion, the response, the reply, the parties' oral arguments during the hearing conducted on October 21, 2016, the supplemental briefing, and the applicable law, the court GRANTS the requested injunction in part and preliminarily enjoins implementation of those portions of Executive Order 13673, as implemented by the FAR Rule published at 81 Fed. Reg. 58562 (Aug. 25, 2016), and the DOL's Guidance regarding the FAR Rule, incorporated by reference therein, 81 Fed. Reg. 58654 (Aug. 25, 2016), that impose new

reporting requirements regarding labor law violations, as defined therein, on government contractors and subcontractors and that prohibit pre-dispute arbitration agreements regarding matters arising under Title VII of the Civil Rights Act and torts based on sexual assault or harassment.  As grounds for this Order, the court issues the following Findings of Fact and Conclusions of Law.

I.      Findings of Fact

        A.      Executive Order 13673

On July 31, 2014, President Barack Obama issued Executive Order 13673.   As subsequently amended, the Executive Order purports to "increase efficiency and cost savings in the work performed by parties who contract with the Federal Government by ensuring that they understand and comply with labor laws."  Fair Pay and Safe Workplaces, 79 Fed. Reg. 45309 (Aug. 5, 2014).

The Executive Order requires that "[f]or procurement contracts for goods and services, including construction, where the estimated value of the supplies acquired and services required exceeds $500,000, each agency shall ensure that provisions in solicitations require that the offeror represent, . . . whether there has been any administrative merits determination, arbitral award or decision, or civil judgment, as defined in guidance issued by the Department of Labor, rendered against the offeror within the preceding 3-year period for violations of any of the following labor laws and Executive Orders (labor laws)":  (1) the Fair Labor Standards Act ("FLSA"); (2) the Occupational Safety and Health Act of 1970 ("OSHA"); (3) the Migrant and Seasonal Agricultural Worker Protection Act; (4) the National Labor Relations Act ("NLRA"); (5) the Davis-Bacon Act ("DBA"); (6) the Service Contract Act ("SCA"); (7) Executive Order 11246 of September 24,

1965 (Equal Employment Opportunity); (8) Section 503 of the Rehabilitation Act of 1973 ("Rehabilitation Act"); (9) the Vietnam Era Veterans' Readjustment Assistance Act of 1974 ("VEVRAA"); (10) the Family and Medical Leave Act (the "FMLA"); (11) Title VII of the Civil Rights Act of 1964 ("Title VII"); (12) the Americans with Disabilities Act of 1990 ("ADA"); (13) the Age Discrimination in Employment Act of 1967 ("ADEA"); (14) Executive Order 13658 of February 12, 2014 (Establishing a Minimum Wage for Contractors); and (15) "equivalent State laws, as defined in guidance issued by the Department of Labor." *Id*.

Pursuant to the Executive Order, contracting officers ("CO") are required to consider the information provided by the offeror in determining "whether an offeror is a responsible source that has a satisfactory record of integrity and business ethics, after reviewing the guidelines set forth by the DOL and consistent with any final rules issued by the Federal Acquisition Regulatory (FAR) Council," notwithstanding the fact that the "violations" that require reporting may not be final decisions or determinations, are not confined to performance of past government contracts, and/or have not been preceded by a hearing or been made subject to judicial review. *Id*.[1]

The Executive Order imposes similar requirements on subcontractors for any subcontract where the estimated value exceeds $500,000. The Executive Order further requires the FAR Council to "propose such rules and regulations and issue such orders as are deemed necessary and appropriate to carry out [the Executive Order], and shall issue final regulations in a timely fashion

---

[1] Previously, contractors were required to file reports of proceedings relating to their business integrity if, and only if, such proceedings arose "in connection with the award or performance of a grant, cooperative agreement, or procurement contract from the Federal Government" and had reached a "final disposition." *See* 2 C.F.R. 200, App'x XII, defining proceedings to be reported in the Federal Awardee Performance and Integrity Information System ("FAPIIS"). The contractor reporting requirements are delimited by statute, 41 U.S.C. § 2313, which contains no provision permitting the FAR Council to expand the database to include or require reports of non-government-funded contractor activities, nor any non-final dispositions of civil or administrative proceedings.

3

after considering all public comments, as appropriate." *Id*.[2]  Additionally, the Executive Order requires the DOL to issue guidance to assist agencies in determining whether the disclosed determinations were issued for "serious, repeated, willful, or pervasive violations" of the fourteen labor laws.  *Id*.  Many of the laws themselves do not recognize such terminology with regard to violations of their provisions.

The Executive Order also provides that contractors and subcontractors who enter into contracts for non-commercial items over $1 million agree not to enter into any mandatory pre-dispute arbitration agreement with their employees or independent contractors on any matter arising under Title VII as well as any tort related to or arising out of sexual assault or harassment. *Id*.  Further, the Executive Order requires that all covered contractors inform their employees in each paycheck of the number of hours worked, overtime calculations (for non-exempt employees), rates of pay, gross pay, additions or deductions from pay, and whether they have been classified as independent contractors.

B.      The FAR Rule and DOL Guidance Implementing the Executive Order

On August 25, 2016, following public comment on a proposed rule, including strong opposition from Plaintiffs and many other groups representing government contractors, the FAR Council published the final FAR Rule that is being challenged in Plaintiffs' Complaint (#1), setting an effective date of October 25, 2016.  81 Fed. Reg. at 58562.  That same day, the DOL published its Guidance further implementing the Executive Order.  81 Fed. Reg. at 58654.

---

[2] The FAR Council is a federal agency charged with assisting in the direction and coordination of Government-wide procurement policy and Government-wide procurement regulatory activities in the Federal Government, in accordance with the Office of Federal Procurement Policy ("OFPP") Act, 41 U.S.C § 1301 *et seq*.  Defendants in this case are the agency representatives of the statutorily designated members of the FAR Council, chaired by the Administrator of the Office of Federal Procurement Policy.

As called for by the Executive Order, the FAR Rule and DOL Guidance require federal contractors and subcontractors for the first time to report for public disclosure on the FAPIIS any "violations" of the federal labor laws set forth in the Executive Order prior to any procurement for federal government contracts/subcontracts exceeding $500,000, in addition to requiring updated disclosures of labor law violations every six months while performing covered government contracts.   The FAR Rule and DOL Guidance make clear that the required disclosures, unlike previous reporting requirements under the FAPIIS disclosure requirements, 2 C.F.R. 200, Appendix XII, include non-final administrative merits determinations, regardless of the severity of the alleged violation, or whether a government contract was involved, and without regard to whether a hearing has been held or an enforceable decision issued.  81 Fed. Reg. at 58668.

Specifically, for any alleged violation of the NLRA, DOL's Guidance states that covered contractors must publicly disclose, *inter alia*, any complaint against them issued by the General Counsel of the National Labor Relations Board (the "NLRB"), even if said complaint has not yet been adjudicated before an Administrative Law Judge ("ALJ") or the Board itself, and even if no court has yet enforced any order of the Board as to the complaint.  81 Fed. Reg. at 58668.  The General Counsel of the NLRB issues more than 1,200 such unfair labor practice complaints each year, a number of which are ultimately dismissed as lacking in merit, in whole or in part, by an ALJ or by the NLRB.  Even of those complaints ultimately found to have merit by the NLRB, a substantial percentage are denied enforcement by courts of appeals.  *See* NATIONAL LABOR RELATIONS BOARD, CHARGES AND COMPLAINTS, www.nlrb.go/news-outreach/graphs-data/charges-and-complaints/ (last visited on October 24, 2016).  As noted in Defendants'

response, for fiscal year 2015, the NLRB's success rate before ALJ's and the Board was 88 percent, while 80 percent of Board decisions were enforced in whole or in part by courts of appeals.  81 Fed. Reg. at 58666.

For alleged violations of the FLSA, DBA, SCA, FMLA, or Executive Order 13658, covered contractors must report, *inter alia*, non-final determinations by the DOL's Wage and Hour Division, including WH-56 "Summary of Unpaid Wages" or any Wage and Hour Division letter, notice, or other document assessing civil monetary penalties, even if such forms or documents have not yet been adjudicated before an ALJ or Administrative Review Board, and even if no court has yet enforced any Wage and Hour order.  81 Fed. Reg. at 58666.  The DOL initiates more than 10,000 of these Wage and Hour "cases" against employers each year.  *See* WAGE AND HOUR DIVISION, FISCAL YEAR STATISTICS FOR WHD, www.dol.gov/whd/statistics/statstables.htm (last visited on October 24, 2016).  A substantial percentage of them are ultimately dismissed or settled without any finding of merit.  81 Fed. Reg. at 58666.

For alleged violations of OSHA, covered contractors must report citations, which are non-final determinations by the Occupational Safety and Health Administration, *inter alia*, even though they have not been adjudicated before an ALJ or the OSHA Review Commission, and even if no court has yet enforced any such determination.  81 Fed. Reg. 58667.  OSHA issues many thousands of citations against employers each year, approximately 75 percent of which are identified by the agency as "serious" violations.  *See* UNITED STATES DEPARTMENT OF LABOR OCCUPATIONAL SAFETY AND HEALTH ADMINISTRATION, OCCUPATIONAL SAFETY AND HEALTH ADMINISTRATION ENFORCEMENT, https://osha.gov/dep/2015_enforcement_summary.html (last

visited on October 24, 2016).  It is common, however, for such citations to be reclassified to "other than serious" by OSHA after they are contested.

For alleged violations of laws enforced by the Office of Federal Contract Compliance Programs ("OFCCP"), the DOL's Guidance states, *inter alia*, that covered contractors must disclose such non-final determinations as a show cause notice for failure to comply with the requirements of Executive Order 11246, Rehabilitation Act, or VEVRAA.  81 Fed. Reg. at 58667.

For alleged violations of discrimination laws enforced by the Equal Employment Opportunity Commission ("EEOC"), DOL's Guidance states that covered contractors must disclose any non-final letter of determination that reasonable cause exists to believe that an unlawful employment practice (including retaliation) has occurred or is occurring.  81 Fed. Reg. at 58665.  The EEOC issues more than 3,000 reasonable cause notices each year, but litigates only about 150 such cases per year, and a significant percentage of such cases are ultimately found to lack merit.  *See* U.S. EQUAL EMPLOMENT OPPORTUNITY COMMISSION, ALL STATUTES FY 1997-FY2015, www.eeoc.gov/eeoc/statistics/enforcement/all.cfm (last visited on October 24, 2016); U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, EEOC LITIGATION STATISTICS, FY 1997 THROUGH FY 2015, www.eeoc.gov/eeoc/statistics/enforcement/litigation.cfm (last visited on October 24, 2016).

The FAR Rule further requires each contracting agency's COs to determine whether companies' reported violations of the identified labor laws render such offerors "non-responsible" based on "lack of integrity and business ethics."  The FAR Rule, like the Executive Order, requires each contracting agency to designate an agency labor compliance advisor ("ALCA") to

assist contracting officers in determining whether a company's actions rise to the level of a lack of integrity or business ethics, and to make written reports to the COs within three business days.[3] Neither the FAR Rule nor the DOL Guidance sets forth any qualifications for the newly created ALCA position.  At oral argument, counsel for Defendants stated that these individuals are not required to be lawyers, and there is no indication in the record that they have been hired with or trained to a level of expertise necessary to analyze and make recommendations as to the nature or severity of the administrative merits determinations, arbitration decisions, or court decisions arising under the fourteen different labor laws.[4]  The Rule also requires each contractor/subcontractor who is required to report violations of labor laws to demonstrate "mitigating" efforts and/or enter into labor compliance agreements or else be subject to a potential finding of non-responsibility for contract award, suspension, debarment, contract termination, or nonrenewal.

The DOL's Guidance further defines the terms "serious," "repeated," "willful," and "pervasive" for all of the above referenced labor law violations, but does so in a manner that creates a different set of criteria than those appearing in the statutes themselves.  81 Fed. Reg. at 58723-24.

---

[3] As conceded in the preamble to the new FAR Rule, the government has previously recognized that "contracting officers generally lack the expertise and tools to assess the severity of labor law violations brought to their attention and therefore cannot easily determine if a contractor's actions show a lack of integrity and business ethics."  81 Fed. Reg. at 58564.

[4] In order to train the ALCAs and advise agency COs, the Department of Labor was expected to create a new Office of Labor Compliance (the "OLC"); however, in the Omnibus Spending Bill for FY 2016, Congress passed a rider denying funding for such an office, so the OLC has not been established.  *See* Consolidated Appropriations Act, 2016, House Amendment No. 1 to the Senate Amendment to H.R. 2029, Military Construction and Veterans Affairs and Related Agencies Appropriations Act, Dec. 15, 2015, at p.2, reported at www.hrpolicy.org/news/story/workplace-regulation, Jan. 8, 2016.

Absent injunctive relief by this court, the stated effective date of the FAR Rule is October 25, 2016.  For the first six months following the implementation of the Rule, October 25, 2016, to April 24, 2017, prime contractors (including a number of Plaintiffs' members) will be compelled to make disclosures on solicitations (and resulting contracts) with an estimated value of $50 million or more.  Starting on April 25, 2017, the prime contractor disclosure requirements will apply to all solicitations (and resulting contracts) with an estimated value of $500,000 or more.  Starting on October 25, 2017, subcontractor disclosures are required for any solicitation (or resulting contract) valued at $500,000 or more.[5]  On January 1, 2017, the paycheck transparency clause will be included in solicitations for contracts over $500,000.  This provision applies only to "individuals performing work under the contract or subcontract."

The Regulatory Impact Analysis ("RIA") calculated costs of $458,352,949 imposed on contractors/subcontractors and $15,772,150 imposed on the government for the first year of the implementation of the new requirements, with second year costs of $413,733,272 for contractors/subcontractors and $10,129,299 for the government.  With respect to benefits, the RIA concluded, "In the final analysis, there were insufficient data to accurately quantify the benefits presented.  The agencies invited respondents to provide data that would allow more thorough benefit estimations, however no data were received that could be used to quantify the benefits of the final rule."  81 Fed. Reg. at 58634.

---

[5] According to published reports, the necessary electronic portal on which government contractors are to file their newly required disclosures is not yet available for use.  *See* Clark, *Contractors Group Files Suit Against 'Fair Pay and Safe Workplaces,'* posted at www.govexec.com/contracting/2016/10/.  At oral argument, counsel for Defendants confirmed that additional modifications to the website were still needed to accept the newly required contractor reports on alleged labor law violations.

II.    Conclusions of Law

    A.    Legal Standard for Granting a Preliminary Injunction

The standards for securing a temporary restraining order or preliminary injunction are substantively the same.  Plaintiffs must demonstrate (1) a substantial likelihood of success on the merits of their case; (2) a substantial threat of irreparable injury; (3) that the threatened injury outweighs any damage that the injunctive order might cause the Defendants; and (4) that the order will not be adverse to the public interest.  *Dennis Melancon, Inc. v. City of New Orleans*, 703 F.3d 262, 268 (5th Cir. 2012), *cert. denied*, 133 S. Ct. 2396 (2013); *Byrum v. Landreth*, 566 F.3d 442, 444 (5th Cir. 2009); *Women's Med. Ctr. v. Bell,* 248 F.3d 411, 418-20, n.15 (5th Cir. 2001).  To preserve the status quo, federal courts in the Fifth Ciruit have regularly enjoined federal agencies from implementing and enforcing new regulations pending litigation challenging them.  *See, e.g., Texas v. United States,* 787 F.3d 733, 743 (5th Cir. 2015) (enjoining executive order inconsistent with immigration statutes); *Nat'l Fed'n of Indep. Bus. v. Perez,* Case No. 5:16-cv-00066-C (N.D. Tex. June 27, 2016), *appeal pending* (5th Cir.) (preliminarily enjoining the DOL's "persuader" rule as violative of Congressional intent under the Labor Management Reporting and Disclosure Act ("LMRDA")).  Here, all four factors support granting injunctive relief.

    B.    Jurisdiction, Standing, and Ripeness

This court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because it presents a federal question.  This court has authority to grant declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201-02 and the provisions of the Administrative Procedures Act ("APA"), 5 U.S.C. §§ 701-706.  The Executive Order is subject to judicial scrutiny because it

is being enforced by Executive Branch officials, *i.e.*, Defendants.  The FAR Council, a federal agency operating within the Executive Branch, has implemented the President's Executive Order by issuing the new FAR Rule.  The DOL, a federal agency also operating within the Executive Branch, has implemented the President's Executive Order by issuing the Guidance incorporated by reference in the new Rule.  Therefore, the Executive Order may be challenged by Plaintiffs on both statutory and non-statutory grounds.  *See Chamber of Commerce of U.S. v. Reich*, 74 F.3d 1322, 1324 (D.C. Cir. 1996) (permitting a challenge to the constitutionality of an executive order based on the DOL's implementation of a rule enforcing the executive order).

Defendants do not contest Plaintiffs' standing to bring this action, and Plaintiffs have properly demonstrated immediate and ongoing injury to their members if the rule is allowed to take effect.  Plaintiffs are Texas and/or national trade associations the members of which regularly bid on and are awarded government contracts exceeding the threshold amounts covered by the Executive Order and the new FAR Rule.  In uncontested affidavits, Plaintiffs state that many of their members will be irreparably harmed by the Executive Order and the FAR Rule in their exercise of First Amendment and Due Process rights as bidders and awardees of government contracts exceeding the threshold amounts covered thereby.  *See* Pl. Ex. 4, Affidavit of ABC Vice President Ben Brubeck; Pl. Ex. 5, Affidavit of NASCO Executive Director Stephen Amitay; s*ee* additional ABC and NASCO comments submitted to the Office of Federal Procurement Policy at Exs. 6-7; *see* also numerous comments opposing the Rule and Guidance at www.regulations.gov.

As associations, Plaintiffs have standing to bring this action on behalf of their members under the three-part test of *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977), because:  (1) Plaintiffs' members would otherwise have standing to sue in their own right; (2) the

interests at stake in this case are germane to Plaintiffs' organizational purposes; and (3) neither the claims asserted nor the relief requested requires the participation of Plaintiffs' individual members. *Accord La. Sportsmen All., L.L.C. v. Vilsack*, 583 F. App'x 379, 380 (5th Cir. 2014) (per curiam); *Ass'n of Am. Physicians & Surgeons, Inc. v. Tex. Med. Bd.*, 627 F.3d 547, 550 (5th Cir. 2010).

Plaintiffs' challenges to the Executive Order, FAR Rule, and DOL Guidance are ripe for review, as these are final government actions presenting purely legal issues in this facial challenge, and Plaintiffs will suffer hardship if the court were to withhold consideration. *Texas v. Dep't of Interior*, 497 F.3d 491, 499 (5th Cir. 2007), *cert. denied*, 555 U.S. 811 (2008) (finding challenge to final administrative regulations ripe for review).

C.      Substantial Likelihood of Success on the Merits

In their Complaint, Plaintiffs challenge the Executive Order, FAR Rule, and DOL Guidance on multiple independent grounds, each of which is sufficient to render these government actions void and unenforceable.  Each of these grounds is discussed below.

1.      Claims that the Executive Order, FAR Rule, and DOL Guidance, Separately and Together, Exceed the President's FAR Council's, and DOL's Authority and Are Otherwise Preempted by Other Federal Labor Laws

As explained above, the public disclosure and disqualification requirements being imposed on federal contractors and subcontractors are nowhere found in or authorized by the statute on which the Executive Order, FAR Rule, and DOL Guidance relies, the Federal Property and Administrative Services Act ("FPASA"), 40 U.S.C. §§ 101 and 121, known as the Procurement Act.  During the course of many decades, neither Congress, nor the FAR Council, nor the DOL has deemed it necessary, practicable, or appropriate for government contracting officers to make

responsibility determinations based on alleged violations of private sector labor and employment laws.  In a majority of the labor laws cited in the Executive Order (specifically NLRA, FLSA, OSHA, Title VII, ADEA, and ADA), Congress spelled out in precise detail what agency or court would be empowered to find a violation, how such a finding would be determined, and what the penalty or remedy would be.  None of these laws provides for debarment or disqualification of contractors for violations of their provisions; none of them provides for such determinations to be made by unqualified, agency contracting officers (or ALCAs); and certainly none of these laws provides for any such action to occur based on non-final, unadjudicated, "administrative merits determinations."

In those instances where Congress has decided to permit the suspension or debarment of government contractors, it has done so expressly in a select category of labor laws that apply directly to government contracts, and even then only after final adjudications of alleged violations by the DOL, subject to judicial review, with full protection of contractors' due process rights. *See* DBA, SCA, Rehabilitation Act, and VEVRAA.  Again, in none of these laws did Congress authorize federal agencies to disqualify government contractors from bidding or performing contracts except under the statutorily specified conditions protecting the contractors' due process rights.

It is well settled that "when Congress has directly addressed the extent of authority delegated to an administrative agency, neither the agency nor the courts are free to assume that Congress intended the Secretary to act in situations left unspoken." *Dep't of Interior*, 497 F.3d at 502 (citing *Nat'l R.R. Passenger Corp. v. Nat'l Ass'n of R.R. Passengers*, 414 U.S. 453, 458 (1974)) ("When a statute limits a thing to be done in a particular mode, it includes the negative

of any other mode.")).  As the Fifth Circuit has further held, "administrative agencies and the courts are 'bound, not only by the ultimate purposes Congress has selected but by the means it has deemed appropriate, and prescribed, for the pursuit of those purposes.'"  *Id*.  (quoting *MCI Telecomms. Corp. v. AT&T Co.*, 512 U.S. 218, 231, n.4 (1994)); *accord Middlesex Cty. Sewerage Auth. v. Nat'l Sea Clammers Ass'n,* 453 U.S. 1, 20 (1981) ("When the remedial devices provided in a particular Act are sufficiently comprehensive, they may suffice to demonstrate congressional intent to preclude the remedy of suits under [other federal laws]."); *see Ragsdale v. Wolverine World Wide, Inc.,* 535 U.S. 81, 91 (2002) (overturning the DOL's exercise of generally delegated rulemaking authority where the agency "exercise[d] its authority in a manner that is inconsistent with the administrative structure that Congress enacted into law").

In the present case, the Executive Order, FAR Rule, and DOL Guidance arrogate to contracting agencies the authority to require contractors to report for public disclosure mere allegations of labor law violations, and then to disqualify or require contractors to enter into premature labor compliance agreements based on their alleged violations of such laws in order to obtain or retain federal contracts.  By these actions, the Executive Branch appears to have departed from Congress's explicit instructions dictating how violations of the labor law statutes are to be addressed.

The Supreme Court overturned a similar government action in *Wisconsin Dep't of Indus. v. Gould,* 475 U.S. 282, 286 (1986).  There, a state attempted by law to disqualify government contractors who had been found by judicially enforced orders to have violated the NLRA on multiple occasions over a five-year period.  *Id*. at 283.  The Supreme Court held that the NLRA foreclosed both "regulatory or judicial remedies for conduct prohibited or arguably prohibited by

14

the [NLRA]." *Id*. at 286.[6]  As has occurred here, the government in *Gould* defended its disqualification policy by asserting that the agency was merely exercising its spending power as a market participant and that the government could choose with whom it would contract without violating the NLRA's provisions.  *Id*. at 290.  Rejecting that defense, the Supreme Court held in *Gould* that the government's attempt to disqualify otherwise eligible contractors from performing work for the government was entitled to no exemption from NLRA preemption under the "market participant" doctrine.  *Id*.  Instead, the Court found the government's actions were "regulatory" in nature because they disqualified companies from contracting with the government on the basis of conduct unrelated to any work they were doing for the government.  *Id*. at 287-88.  The holding in *Gould* has been applied equally to the Executive Branch of the federal government.  *See Reich*, 74 F.3d at 1344 (applying NLRA preemption to federal executive order "encroaching on NLRA's regulatory territory").

Just as in *Reich*, the challenged Executive Order and FAR Rule directly conflict with a longstanding judicial interpretation of the NLRA.  The Supreme Court has long held that the NLRA is a limited "remedial" statute that does not allow the government to impose any punitive measures against employers that exceed make whole relief for the injured parties provided in the NRLA.  *See Phelps Dodge Corp. v. NLRB*, 313 U.S. 177, 197-99 (1941); *Republic Steel Corp. v. NLRB*, 311 U.S. 7, 10 (1940).  This is as direct of a conflict as was present in the *Reich* case, and is the same conflict that led the Supreme Court in *Gould* to prohibit governmental disqualification of contractors alleged (or even found) to have violated the NLRA.

---

[6] The facts of *Gould* presented a less burdensome scenario than is presented here because the state only disqualified contractors who were found by "judicially enforced orders" to have violated the NLRA.  The current Executive Order and FAR Rule are far more expansive in their reach because they allow disqualification of government contractors without requiring judicial review and enforcement of final agency action.

15

For similar reasons, the Executive Order and FAR Rule seemingly conflict with the other labor laws incorporated therein.  In this regard, Defendants' Opposition wrongly claims that those laws do not "limit a thing to be done in a particular mode" and "do not prescribe the means it has deemed appropriate." (Def. Opp. at 13).  To the contrary, that is exactly what the other federal labor laws do, in their "unusually elaborate enforcement provisions."  *See Kendall v. City of Chesapeake*, 174 F.3d 437, 433 (4th Cir. 1999).  None of the prior executive orders addressed in Defendants' cited cases conflicted with federal labor laws.  *See, e.g., AFL-CIO v. Kahn*, 618 F.2d 784, 796 (D.C. Cir. 1979) (NLRA was "not subvert[ed]" by Executive Order enforcing wage controls); *UAW-Labor Emp't & Training Corp. v. Chao*, 325 F.3d 360 (D.C. Cir. 2003) (posting notice of undisputed employee rights presented no conflict with NLRA).

The Executive Order, FAR Rule, and DOL Guidance explicitly conflict with those labor laws that already specify debarment procedures, after full hearings and final adjudications, for contractors who violate the requirements specifically directed at government contracting, *i.e.*, DBA, SCA, Rehabilitation Act, VEVRAA, Executive Order 11246, and Executive Order 13658. It defies reason that Congress gave explicit instructions to suspend or debar government contractors who violate these government-specific labor laws only after a full hearing and final decision, but intended to leave the door open to government agencies to disqualify contractors from individual contract awards without any of these procedural protections.  The DOL Guidance does not offer any support for its overbroad claims in this regard.  81 Fed. Reg. at 58658-59.

Finally, even if federal agencies could properly disqualify government contractors based upon final administrative decisions, arbitration awards, and court orders enforcing one of the fourteen labor laws at issue, the Executive Order and FAR Rule should not be allowed to go into

16

effect because they extend their reach far beyond those limited circumstances.  The Order and Rule appear to conflict directly with every one of the labor laws they purport to invoke by permitting disqualification based solely upon "administrative merits determinations" that are nothing more than allegations of fault asserted by agency employees and do not constitute final agency findings of any violation at all.   As noted above in the Findings of Fact, agency employees who are assigned to administer these labor laws issue thousands of complaints, cause findings, wage notices, and citations each year, many of which are dismissed or significantly reduced after they are contested, often after lengthy proceedings.   There is no statutory basis to treat these "administrative merits determinations" as final and binding while they are still being contested or when they are settled without admission of fault.   Thus, it appears to be a denial of fundamental statutory and constitutional rights for the Executive Order and FAR Rule to so act.

> 2.   Claims that the Executive Order, FAR Rule, and DOL Guidance Violate the First Amendment

There is also merit to Plaintiffs' contention that any bidder on a solicitation occurring after the new FAR Rule goes into effect will suffer an infringement of their First Amendment rights in the form of "compelled speech."  This is so because the Executive Order, FAR Rule, and DOL Guidance impose an immediate disclosure requirement that obligates federal contractors and their subcontractors for the first time to report for public disclosure any "violations" of the fourteen federal labor laws occurring since October 25, 2015, regardless of whether such alleged violations occurred while performing government contracts, and without regard to whether such violations have been finally adjudicated after a hearing or settled without a hearing, or even occurred at all.

It is well settled that the First Amendment protects not only the right to speak but also the right not to speak.  For this reason, government compulsion of speech has repeatedly been found

to violate the Constitution.  *See Riley v. Nat'l Fed'n of the Blind of N.C., Inc.*, 487 U.S. 781, 797 (1988) (overturning law requiring fundraisers to disclose retained revenues to potential donors); *Wooley v. Maynard*, 430 U.S. 705, 714 (1977); *W.Va. State Bd. of Educ. v. Barnette*, 319 U.S. 624 (1943); *see also  Rumsfeld v. Forum for Academic & Institutional Rights, Inc.*, 547 U.S. 47, 61 (2006); *Tex. State Troopers Ass'n v. Morales*, 10 F. Supp.2d 628, 634 (N.D. Tex. 1998) ("[T]he First Amendment requires that the State not dictate the content of speech absent necessity, and then, only by means precisely tailored.") (citations omitted).

Under the DOL Guidance, the FAR Rule will require contractors/subcontractors to report that they have violated one or more labor laws and to identify publicly the "labor law violated" along with the case number and agency that has allegedly so found.  FAR Rule 22.2004-2, 81 Fed. Reg. at 58641.  Far from being narrowly tailored, the disclosure requirement forces contractors to disclose a list of court actions, arbitrations, and "administrative merits determinations," even where there has been no final adjudication of any violation at all, and regardless of the severity of the alleged violation.  81 Fed. Reg. at 58664.  As noted above, thousands of "administrative merits determinations" are issued against employers of all types each year, many of which are later dismissed or settled and most of which are issued without benefit of a hearing or review by any court.  The arbitration decisions and civil determinations, including preliminary injunctions, that will have to be reported under the FAR Rule are likewise not final and are subject to appeal.  The Executive Order's unprecedented requirement, as implemented by the FAR Rule and DOL Guidance, thus compels contractors to engage in public speech on matters of considerable controversy adversely affecting their public reputations and thereby infringing on the contractors' rights under the First Amendment.

In *Nat'l Ass'n of Mfrs. v. SEC* ("*NAM*"), the D.C. Circuit held that a similarly compelled public reporting requirement violated the First Amendment.  748 F.3d 359 (D.C. Cir. 2014), *adhered to on reh'g*, 800 F.3d 518 (D.C. Cir. 2015), *reh'g* en banc *denied*, 2015 U.S. App. LEXIS 19539 (D.C. Cir. Nov. 9, 2015).   There, an SEC rule required private businesses to disclose their use of "conflict minerals" (minerals obtained from war zones).  *NAM*, 748 F.3d at 363.  The court found that using such minerals, and disclosure of such use, was "controversial" in nature.  *NAM*, 800 F.3d at 530.  The court therefore required that the government bear a heavy burden to prove that forcing businesses to speak publicly about such activities in the form of public reports was narrowly tailored to advance a substantial government interest.  *Id.* at 555.  Rejecting the government's claim that similar reports were "standard," the appeals court found that the government failed to meet its burden because the claim that the compelled reports would achieve the purported government interest was based on speculation.  *Id.* at 530.  The appeals court further took issue with the government's attempt to force companies to "stigmatize" themselves by filing the required reports, stating:  "Requiring a company to publicly condemn itself is undoubtedly a more 'effective' way for the government to stigmatize and shape behavior than for the government to have to convey its views itself, but that makes the requirement more constitutionally offensive, not less so." *Id.*[7]

The Executive Order, FAR Rule, and DOL Guidance share the same constitutional defect as the conflict minerals rule in *NAM,* only more so.  The Order, Rule, and Guidance compel

---

[7]The *NAM* court also rejected the defense made at oral argument by counsel for Defendants, who claimed that it is sufficient for contractors to be able to explain the mitigating circumstances of their violations with additional postings.  The D.C. Circuit held: "The right to explain compelled speech is present in almost every such case and is inadequate to cure a First Amendment violation.  [citation omitted] Even if the option to explain minimizes the First Amendment harm, it does not eliminate it completely . . . ."  748 F.3d at 373.

government contractors to "publicly condemn" themselves by stating that they have violated one or more labor or employment laws.  The reports must be filed with regard to merely *alleged* violations, which the contractor may be vigorously contesting or has instead chosen to settle without an admission of guilt, and, therefore, without a hearing or final adjudication.  The disclosures are not "narrowly tailored" but are instead much broader than required to achieve the Executive Order's stated interest of disclosing matters demonstrating lack of integrity and business ethics.  By the DOL's own admission, many of the reported violations will not be used to make that determination.  81 Fed. Reg. at 58664.

Moreover, contrary to Defendants' assertions, the contractors are not being required to disclose purely non-controversial, factual information.  By defining "labor law violation" to include "administrative merits determinations," the government is requiring the disclosure of merely the opinions of agency employees who chose to issue notices, send letters, issue citations, or lodge complaints accusing a contractor of violating a labor law as if those opinions were actually labor law violations.  These allegations are certainly controversial in nature, and they may prove not to be factual at all, if, after full exhaustion of the administrative and judicial remedies afforded employers by the statutes, the contractor is absolved of liability and found not to have violated the labor laws.

It must also be noted that the FAR Council and the DOL have failed to support the basic premise of the Executive Order and the new Rule, namely that public disclosure of non-adjudicated determinations of labor law violations on private projects correlates in any way to poor performance on government contracts.  The studies cited by the FAR Council for this premise did not examine the universe of administrative merits determinations, regardless of severity.  81 Fed.

20

Reg. at 58564.   None of the studies purported to show a relationship between mere *non-adjudicated, unresolved allegations* of labor law violations and government contract performance.  Instead, the various studies cited in the Rule's preamble, with few exceptions, rely on the most severe findings of labor violations by agencies and courts, which have been closed and penalties paid.  In any event, the Executive Order, FAR Rule, and DOL guidance have expanded their reach far beyond any claimed impact on government procurement and instead rely entirely on speculation in claiming that the burdensome new disclosures of non-final determinations demonstrate any likelihood of poor performance on government contracts.[8]

Finally, it is settled in this circuit that government contractors are entitled to the same First Amendment protections as other citizens, and the government's procurement role does not entitle it to compel speech as the price of maintaining eligibility to perform government contracts.  *See O'Hare Truck Serv. v. City of Northlake*, 518 U.S. 712 (1996) (First Amendment applied to government contractor's right to placement on list of contractors eligible for awards); *Perry v. Sindermann*, 408 U.S. 593, 597 (1972) (holding that the government "may not deny a benefit to a person on a basis that infringes his constitutionally protected interests – especially, his interest in freedom of speech."); *see also Oscar Renda Contracting, Inc. v. City of Lubbock, Tex.*, 463

---

[8] At oral argument, counsel for Defendants claimed that the types of reports being imposed on government contractors by the new Rule were "nothing new," because similar, non-final determinations already have to be disclosed in other areas of law.  This assertion is contradicted by the government's own website, the FAPIIS, and both the statute and FAR regulation establishing the reporting requirements for that site.  Thus, according to 2 C.F.R., Appendix XII, government contractors prior to the new Rule are required to file reports of proceedings relating to their business integrity if, and only if, such proceedings arose "in connection with the award or performance of a grant, cooperative agreement, or procurement contract from the Federal Government" and had reached a "final disposition."  These contractor reporting requirements are delimited by statute, 41 U.S.C. § 2313, which contains no provision permitting the FAR Council to expand the database to include or require reports of non-government-funded contractor activities, nor any non-final dispositions of civil or administrative proceedings.

F.3d 378 (5th Cir. 2006), *cert. denied*, 549 U.S. 1339 (2007) (applying these holdings to bidders for new contracts).

For all of the foregoing reasons, the reporting requirements of the Executive Order, the FAR Rule, and the DOL Guidance, appear to violate the First Amendment and must be preliminarily enjoined to prevent irreparable harm to Plaintiffs' members from compelled speech that is not narrowly tailored to achieve any compelling government interest.

3. <u>Claims that the Executive Order, FAR Rule, and DOL Guidance Violate the Due Process Rights of Government Contractors and Offerors</u>

Courts have long held that contractors and offerors are entitled to due process before being disqualified from performing government contracts. *See Old Dominion Dairy Prods., Inc. v. Sec'y of Def.*, 631 F.2d 953, 963 (D.C. Cir. 1980) (applying the due process clause of the Fifth Amendment). As the court there held, government contractors and bidders have a "liberty" interest in the right to be "free from stigmatizing governmental defamation having an immediate and tangible effect on [their] ability to do business." *Id*. at 961. The FAR Rule likely violates the due process rights of Plaintiffs' government contractor members by compelling them to report and defend against non-final agency allegations of labor law violations without being entitled to a hearing at which to contest such allegations.

As a matter of Constitutional due process, under all of the statutes incorporated by reference in the Executive Order, FAR Rule, and DOL Guidance, any employer faced with an administrative merits determination has a right to a hearing before an ALJ, appeal to the head(s) of the agency involved, or other administrative review process, as well as judicial review, before enforcement of any such determination takes place. *See, e.g.*, *Brennan v. Winters Battery Mfg. Co.*, 531 F.2d 317, 324-25 (6th Cir. 1975). The FAR Rule disregards government contractors'

due process rights, however, by directing contracting officers to consider as potentially disqualifying any violations that have been found by an administrative agency (or court), including those determinations that have not yet been contested in a hearing or judicially reviewed.

Thus, under the FAR Rule and DOL Guidance, complaints issued by an NLRB Regional Director must be reported, even though the allegations in them are based solely on investigatory findings without judicial or quasi-judicial safeguards.  Similarly, EEOC determination letters that are issued at the nascent stages of the administrative process must be reported even though they are subject to reversal months or years down the road.  These and other non-final determinations by a single agency official do not constitute reportable "violations" under any reasonable definition and should not be considered in contracting decisions.  Furthermore, to contest even decisions by full agency boards, an employer must generally exhaust the administrative process through the agency before challenging the agency action in federal court.  *See NLRB v. United Food & Commercial Workers Union, Local 23*, 484 U.S. 112, 132 (1987).

The Fifth Circuit's recent decision in *Gate Guard Servs. v. Perez* is instructive.  792 F.3d 554 (5th Cir. 2015).  Five years after the DOL investigated Gate Guard for purportedly violating the FLSA, the court awarded the company attorneys' fees as a result of the DOL's frivolous and "oppressive" conduct investigating and litigating the matter.  *Id*. at 562.  The court found among other misconduct that the DOL deliberately shredded investigation notes, employed an investigator unqualified to undertake the investigation, surprised an employee at the facility when it was known company attorneys would not be present, inflated the damages calculation by about $4 million, and continued litigating the case "despite overwhelming contradictory evidence."  *Id*. at 562-63.

Absent injunctive relief, Plaintiffs' members will be required to report pending "violations" like those in *Gate Guard*, even though years later they may be vindicated—such as by demonstrating to a court that the government's case wholly lacked merit. *See, e.g., Heartland Plymouth Ct. MI, LLC v. NLRB*, ___ F.3d ___, No. 15-1034, 2016 WL 5485145 (D.C. Cir. Sept. 30, 2016) (awarding attorneys' fees to employer victim of "oppressive" and "bad faith" administrative determination of the NLRB after years of litigation stemming from an unjustified complaint); *S. New England Tel. Co. v. NLRB*, 793 F.3d 93, 97 (D.C. Cir. 2015) (vacating NLRB decision years later, citing "[c]ommon sense" in resolving the dispute).

These examples of enforcement agency conduct that has later been rejected by the courts illustrate the fallacy and danger of the DOL Guidance's definition of "violation." Under the Executive Order and FAR Rule, a court's vindication of a contractor's position may well come too late. The damage to a contractor's business and reputation stemming from a reportable "violation" later reversed cannot be undone.

    4.    <u>Claims that the New Rule and Guidance Are Arbitrary and Capricious and Entitled to No Deference</u>

The APA, 5 U.S.C. § 706(2)(A), directs reviewing courts to "hold  unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary and capricious, an abuse of discretion,  or otherwise  not in accordance with law." The FAR Council and the DOL have failed to give an adequate explanation for imposing the drastic new requirements set forth in the Rule and Guidance. As the Supreme Court recently made clear in *Encino Motorcars, LLC v. Navarro*, agencies act arbitrarily and capriciously when they change course without taking cognizance of "reliance interests" of the regulated community and where the policy reversal results in "unexplained inconsistencies." ___ U.S. ___, 136 S. Ct. 2117, 2125 (2016).

An example of the unexplained inconsistencies in the FAR Rule is how the cumbersome new process can possibly avoid bogging down the already overloaded procurement process.  It is unclear how the concededly inexpert contracting officers, in conjunction with the newly created and questionably qualified ALCAs, can be expected to review what are expected to be significant numbers of administrative merits determinations (along with arbitration awards and court decisions), relating to esoteric fields of labor law that neither the contracting officers nor the ALCAs appear to be trained to administer.  All of this is to occur within a three-day period, with some limited extensions, so as not to slow down the procurement process.  Yet, it is apparent from the face of the FAR Rule and DOL Guidance that the examination and analysis of the necessary documents, administrative agency rulings, and contractor responses thereto and the preparation of written reports regarding the impact on contractor responsibility must certainly take substantially longer than three days to accomplish.  The underlying agency actions that lead to such determinations not uncommonly take months or even years to reach a final determination due to the complexity of the labor laws that the enforcement agencies must administer.  The complexity of the DOL Guidance alone is sufficient reason to believe that this new system is likely to lead to delays and arbitrary and inconsistent results in the assessment of contractor responsibility, to the detriment of the procurement system.

The FAR Rule and DOL Guidance also impose significant additional costs and expenses on government contractors who will incur substantial costs in looking back at their "violations" for a period of three years before a contract is offered, which then must be updated every six months.  According to Plaintiffs, these new costs will require many of their members to charge higher prices, and/or to withdraw from the government contracting market, thereby injuring

competition and increasing the costs to taxpayers.  In response to a recent survey conducted by Plaintiff ABC, more than half of the respondents said the FAR Rule's onerous requirements, including reporting alleged violations that firms are still contesting, will force them to abandon the pursuit of federal contracts.  Ninety-one percent of respondents said the Rule will impose a significant or extreme burden on their firms.  As further detailed in the comments filed by Plaintiff NASCO, NASCO's own survey of its membership established that very few members currently are able to track the information now being sought by the FAR Rule and that the resources needed to do so will be tremendous.  Expenditures will rise for in-house and outside legal counsel, expensive information technology systems, and expanded human resource personnel, negatively affecting the cost, availability, quality, and delivery of these vital protective services.

Many similar industry comments appear in the rulemaking record at www.regulations.gov, and these concerns have not been addressed by the FAR Rule or DOL Guidance.  Indeed, the government estimates that the new disclosure requirements, which are a substantial departure from and a significant expansion of prior reporting rules, will result in total costs to contractors/ subcontractors and the government of $474,075,099 in the first year and $423,862,572 in the second year.  Yet, despite the efforts of agency employees and invitations to interested parties to provide data, the government was unable to quantify any benefits derived from the sweeping changes imposed by the Executive Order, FAR Rule, and DOL Guidance.  Hence, Defendants have not demonstrated that implementation of these requirements will promote economy and efficiency in government contracting, as contemplated by the Procurement Act, 40 U.S.C. § 101.  In fact, the reverse appears to be the case, in view of the complex, cumbersome, and costly requirements of the Executive Order and Rule, which hamper efficiency without quantifiable

benefits.  These circumstances evince arbitrary and capricious rulemaking.  *See Encino Motorcars, LLC,* 136 S. Ct. at 2125.

### 5.   Claims that the Executive Order and the FAR Council Rule Violate the Federal Arbitration Act

The Executive Order and the Rule provide that contractors and subcontractors who enter into contracts for non-commercial items over $1 million must agree not to enter into any mandatory, pre-dispute arbitration agreements with their employees or independent contractors on any matter arising under Title VII, as well as any tort related to or arising out of sexual assault or harassment.  Curiously, this provision does not apply to employees alleging age or disability discrimination.  It also does not apply to contractors and subcontractors whose employees are covered by collective bargaining agreements.  As was clarified at oral argument, this new provision will be enforced not only on government contracts but also with regard to employees performing private work, with no apparent nexus to the government's economy and efficiency.

The Federal Arbitration Act ("FAA") provides that "[a] written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  This provision establishes "a liberal federal policy favoring arbitration agreements."  *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983).

The FAA "requires courts to enforce agreements to arbitrate according to their terms."  *CompuCredit Corp. v. Greenwood*, ___ U.S. ___, 132 S. Ct. 665, 669 (2012); *accord Am. Express Co. v. Italian Colors Rest.*, ___ U.S. ___, 133 S. Ct. 2304, 2309 (2013).  The Court emphasized in *CompuCredit* that this requirement applies "even when the claims at issue are

federal statutory claims, unless the FAA's mandate has been overridden by a contrary congressional command." 132 S. Ct. at 669 (citations omitted).

Contrary to Defendants' attempt to distinguish a rule prohibiting new arbitration agreements from a rule prohibiting enforcement of existing agreements, neither type of rule is authorized by the FAA in the absence of any congressional command that would override the requirement that arbitration agreements be enforced in accordance with their terms. Defendants' reliance on the Franken Amendment to the Defense Authorization Act is misplaced. That Amendment simply demonstrates that Congress may choose to modify one statute with another and that it knows how to limit arbitration policies when it so desires. The Executive Branch does not possess similar authority to modify Congressional enactments such as the FAA. Such overstepping of authority in the guise of enhancing federal procurement practices is unwarranted.

D.    Remaining Three Criteria for a Preliminary Injunction

1.    Substantial Threat of Irreparable Harm to Plaintiffs

As discussed above, an employer who fails to comply with the Executive Order, as implemented by the FAR Rule and DOL Guidance, is subject to disqualification from government contracts. Once the FAR Rule goes into effect, Plaintiffs' government contractor members' only means of avoiding losing such potential work will be to disclose alleged violations of a host of labor laws even if the purported violations have not been fully adjudicated and resolved. Based on the record and Plaintiffs' declarations, such compelled speech infringes the First Amendment rights of bidders and contractors. Pl. Ex.'s 4 and 5, Affidavits of Ben Brubeck and Stephen Amitay; Pl. Ex.'s 6 and 7, Supplemental Comments filed by ABC and NASCO.

Once First Amendment rights have been chilled, there is no effective remedy, and it is well established in the Fifth Circuit that infringement of First Amendment rights, standing alone, constitutes irreparable harm.  *See Texans for Free Enter. v. Tex. Ethics Comm'n*, 732 F.3d 535, 539 (5th Cir. 2013) ("We have repeatedly held . . . that the loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.") (and accompanying citations); *accord Opulent Life Church v. City of Holly Springs, Miss.*, 697 F.3d 279, 295 (5th Cir. 2012).

The Executive Order and FAR Rule present an imminent and non-speculative threat to Plaintiffs' members' First Amendment rights by virtue of the fact that their public reports of alleged violations may be used by their competitors and adversaries to gain competitive advantage over Plaintiffs and their members.  They will likely suffer increased costs, loss of customers, and loss of goodwill, regardless of whether they are actually disqualified from government contracts, by being labeled labor law violators.  First Amendment violations of the sort imposed by the new rules have been found to constitute irreparable harm justifying preliminary injunctive relief.  *See Nat'l Solid Waste Mgmt. Ass'n v. City of Dallas*, 903 F. Supp. 2d 446, 470 (N.D. Tex. 2012) ("When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable [harm] is necessary.") (citations omitted).  The same principles apply to the Fifth Amendment violations of due process outlined above, which similarly deprive Plaintiffs' members of their liberty interests in reputation and again constitute irreparable harm.  Furthermore, Plaintiffs will suffer irreparable harm by being required to forego the ability to negotiate pre-dispute arbitration agreements to resolve labor law claims, even with respect to employees not working on federal contracts, if they seek to obtain government contracts—an

29

injury which is not readily compensable through monetary damages.  *See Heil Trailer Int'l Co. v. Kula*, 542 F. App'x 329, 335 (5th Cir. 2013) ("An irreparable injury is one that cannot be undone by monetary damages or one for which monetary damages would be 'especially difficult to calculate.'"); *Dennis Melancon*, 703 F.3d at 262; *Basiccomputer Corp. v. Scott*, 973 F.2d 507, 511 (6th Cir. 1992) (stating that "an injury is not fully compensable by money damages if the nature of the plaintiff's loss would make damages difficult to calculate").

2.  Lack of Harm to Defendants

An order for injunctive relief in the present case will simply preserve the status quo and temporarily retain the same rules and guidelines in effect for government contractor selection that have been in place for decades.  There is no evidence that employees or the general public will be harmed as a result of this relief.  Indeed, the identified problems with the government website, the lack of time to train the COs or ALCAs, and the other burdens associated with the FAR Rule, indicate that the government could benefit, rather than be harmed, by maintaining the status quo. Thus, there is no harm in requiring federal agencies to continue to follow their existing practices for selecting contractors until this matter can be concluded with a final decision on the merits.  In this regard, mere delay of government enforcement does not constitute sufficient harm to deny injunctive relief.  *See Texas v. United States*, 809 F.3d 134,186 (5th Cir. 2015), *as revised* (Nov. 25, 2015), *aff'd*, 136 S. Ct. 2271 (2016).

3.  Public Interest Will Be Served

Injunctive relief is necessary to protect the public interest.  Public policy demands that governmental agencies be enjoined from acting in a manner contrary to the law.  *See id.*  Beyond that, it is in the public interest to ensure the delivery of economical and efficient services from

government contractors to federal government agencies, which would likely be impaired by the arbitrary and unnecessary burdens imposed by the Executive Order, FAR Rule, and DOL Guidance.

E.    Paycheck Transparency Requirements

The court does not find that Plaintiffs have established a substantial likelihood of success on their claims regarding the "paycheck transparency requirement" and have failed to establish that they will suffer irreparable harm as to the implementation of those provisions, which do not take effect until January 1, 2017.  *See* 81 Fed. Reg. at 58713.  Therefore, the court declines to enjoin enforcement of the paycheck provisions.

IV.    Conclusion

For the reasons set forth above, Plaintiffs have satisfied all the prerequisites for the issuance of a preliminary injunction with respect to those portions of the Executive Order, FAR Rule, and DOL Guidance that impose new reporting requirements on federal contractors and subcontractors and restrict the availability of arbitration.  FED. R. CIV. P. 65(d); *Byrum*, 566 F.3d at 445.  Plaintiffs have demonstrated a substantial likelihood of success on the merits as to these claims; they have shown irreparable harm in the absence of immediate relief; the balance of harms favors Plaintiffs; and the public interest supports issuance of an injunction to maintain the status quo of many decades pending a final decision on the merits.  Specifically, Defendants are enjoined for implementing any portion of the FAR Rule or DOL Guidance relating to the new reporting and disclosure requirements regarding labor law violations as described in Executive Order 13673 and implemented in the FAR Rule and DOL Guidance.  Further, Defendants are enjoined from enforcing the restriction on arbitration agreements.

The court finds that Plaintiffs have not demonstrated a likelihood of success on the merits or irreparable harm with respect to the paycheck transparency requirement.  This court has authority to enjoin the implementation of those portions of Executive Order 13673 that impose new reporting requirements on contractors and subcontractors regarding labor law violations and restrict the availability of arbitration agreements on a nationwide basis and finds that it is appropriate to do so in this case.  *See Texas v. United States*, 809 F.3d at 188 (upholding nationwide injunction because "partial implementation of [a federal rule] would "detract from the integrated scheme of regulation created by Congress."); *see also Texas v. United States*, 787 F.3d 733, 769 (5th Cir. 2015) (same).

The court has considered the issue of security pursuant to Rule 65(c) of the Federal Rules of Civil Procedure and finds that Defendants will not suffer any financial loss that warrants the need for Plaintiffs to post security.  The Fifth Circuit has held that a district court has the discretion to "require no security at all." *Kaepa, Inc. v. Achilles Corp.*, 76 F.3d 624, 628 (5th Cir.), *cert. denied*, 519 U.S. 821 (1996); *Texas v. United States*, Civil No. B 14-254 (S.D. Tex. Feb. 16, 2015); *see Corrigan Dispatch Co. v. Casa Guzman, S.A.*, 569 F.2d 300 (5th Cir. 1978). After considering the facts and circumstances of this case, the court concludes that security is unnecessary and exercises its discretion not to require the posting of security in this situation.

IT IS SO ORDERED.

SIGNED at Beaumont, Texas, this 24th day of October, 2016.

*Marcia A. Crone*
—————————————————
MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE